ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana

Heather Hagan McVeigh
Jared Jedick
Betsy M. Isenberg
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Kenneth J. Falk
Kelly R. Eskew
Gavin M. Rose
ACLU of Indiana
Indianapolis, Indiana



_____

## In the
## Indiana Supreme Court

_____

No. 49S00-1407-PL-494

COMMISSIONER OF THE INDIANA BUREAU OF MOTOR VEHICLES
  IN HIS OFFICIAL CAPACITY,                                       *Appellant/Defendant below*,

v.

RODNEY G. VAWTER, ET AL.,                                          *Appellees/Plaintiffs below*.

_____

Appeal from the Marion Superior Court, No. 49D14-1305-PL-06159
The Honorable James B. Osborn, Judge

_____

On Direct Appeal

_____

**November 6, 2015**

**Dickson, Justice**.

In accord with a recent decision of the United States Supreme Court, we uphold the actions of the Indiana Bureau of Motor Vehicles in the processing of applications for

personalized license plates.

This is a direct appeal from a trial court summary judgment declaring unconstitutional the statute that authorizes the Indiana Bureau of Motor Vehicles ("BMV") to refuse to issue personalized license plates ("PLPs"). The trial court found that the statute and its related policies were vague, overbroad, and lacking in content-neutrality, violating the First and Fourteenth Amendments to the United States Constitution. The trial court also held that the Bureau violates due process under the Fourteenth Amendment by providing insufficient reasons for a denial or revocation of a PLP. The BMV appeals, arguing that because personalized license plates are government speech, the statute and policies are constitutional. For the reasons expressed below, we agree and reverse the trial court's summary judgment for the plaintiffs on these issues and direct the trial court to enter summary judgment for the BMV on these claims.

Indiana allows a registered owner or lessee of certain types of vehicles, including passenger motor vehicles, to apply to the BMV for a PLP. Ind. Code § 9-18-15-1.[1] PLPs display numbers and/or letters in an alphanumeric combination which identifies the vehicle and is "requested by the owner or the lessee of the vehicle and approved by the bureau." Ind. Code § 9-13-2-125; see also Ind. Code § 9-18-15-4(a). Indiana's PLPs have become quite popular: between January 1, 2011 and July 19, 2013, the BMV received 71,452 new applications for these plates.

After receiving a PLP application, the BMV is permitted by statute to reject any PLP alphanumeric combination that "(1) carries a connotation offensive to good taste and decency; (2) would be misleading; or (3) the bureau otherwise considers improper for issuance." Ind. Code § 9-18-15-4(b). The BMV also created both an administrative rule and a policy guide for making rejection and revocation decisions. The administrative rule allowed the BMV to "revoke a previously issued PLP if the bureau: (1) receives a substantial number of complaints regarding the previously issued PLP; and (2) determines the previously issued PLP contains references or expressions that Indiana law prohibits." 140 IAC 2-5-4(a). The policy guide provided that a

---

[1] Other vehicles eligible for PLPs include motorcycles, recreational vehicles, or vehicles registered as a truck with a declared gross weight of not more than eleven thousand pounds. Ind. Code § 9-18-15-1(a).

BMV License Plate/PLP Committee would review PLP applications and prescribed nine categories of reasons why PLP applications "may be prohibited." Appellant's App'x at 87. The Committee, however, had discretion to reject PLPs outside those categories and to accept PLPs within them. As the Committee made decisions, the BMV stored rejected applications– approximately 6,000 by 2013–on a list to compare with future applications. For each rejection, the BMV mailed the applicant a form letter indicating that their application was denied "based on the inappropriate content or invalid format." *Id.* at 14.

The plaintiffs, as a certified class,[2] challenged the constitutionality of the PLP program.[3] They argue that "the decisionmaking process used in denying or revoking PLPs," violates the First Amendment and the Due Process Clause of the Fourteenth Amendment. Appellee's Br. at 1. The BMV argues in response that because PLPs are government speech, the challenged standards do not violate the Constitution. The trial court granted summary judgment in favor of the class, concluding that "Indiana Code § 9-18-5-4(b), 140 IAC 2-5-4, and the Policy Statement violate the First Amendment and due process as vague, overbroad, and lacking in content-neutrality." Appellant's App'x at 29. The trial court also held that "[t]he BMV denies procedural due process to those whose PLPs are denied or revoked" because "there are no specific factual bases given for the determination." *Id.* at 35, 37. The BMV appeals these decisions.[4]

---

[2] The class, Class A, includes "[a]ll applicants or recipients of personalized license plates whose applications will be denied or were denied after May 7, 2011, or whose existing personalized license plates will be revoked or were revoked after May 7, 2011 . . . ." Appellant's App'x at 22. The class representative, Rodney Vawter, is a corporal in the Greenfield, Indiana Police Department. For three years, Corporal Vawter displayed a Fraternal Order of Police PLP with the alphanumeric combination "0INK." But when the BMV in 2013 rejected an Indiana Association of Chiefs of Police PLP reading "O1NK," the BMV's computer system flagged Corporal Vawter's plate as similar to a rejected PLP. The BMV then revoked Mr. Vawter's PLP.

[3] A second class, Class B, challenged the BMV's decision to suspend the PLP program. The class included "[a]ll persons who are or will be precluded from applying for and/or obtaining a personalized license plate because the Commissioner of the Bureau of Motor Vehicles has suspended the personalized license plate program." *Id.* Jay Voigt represented Class B.

[4] Following the commencement of this litigation, the BMV Commissioner suspended the PLP program. The plaintiffs then challenged that decision as well, and the trial court held that "[t]he unilateral suspension of the PLP program by the [BMV] Commissioner is outside the scope of his authority and was invalid." *Id.* at 37. The trial court also held that the BMV's policy statement "is a rule under Indiana law and is void inasmuch as it has not been promulgated." *Id.* at 26. These rulings are not challenged in this appeal.

This Court has mandatory and exclusive jurisdiction over this appeal because the trial court declared a state statute unconstitutional. Ind. Appellate Rule 4(A)(1)(b). We review the trial court's grant of summary judgment and any questions of federal constitutional law *de novo*. Bleeke v. Lemmon, 6 N.E.3d 907, 917 (Ind. 2014); Choose Life Ill., Inc. v. White, 547 F.3d 853, 858 (7th Cir. 2008). The material facts are undisputed.

The BMV argues on appeal that its PLP decision-making process is constitutional because "personalized plates are government speech, and even viewpoint discrimination is permissible." Appellant's Br. at 12. The BMV further contends that its "procedures for denying an application or revoking . . . plates satisfy procedural due process" because "[m]otorists have no protected interest in possessing a personalized plate that displays any particular message." Appellant's Br. at 15, 41. The BMV especially relies on the United States Supreme Court's recent decision in Walker v. Tex. Div., Sons of Confederate Veterans, Inc., 135 S.Ct. 2239, 192 L.Ed.2d 274 (2015), arguing that under Walker's reasoning, personalized license plates must be government speech.[5]

## 1. The Walker Test for Government Speech

In Walker, the Supreme Court identified a three-factor standard for identifying government speech. 135 S.Ct. at 2247, 192 L.Ed.2d at 282-83. First, whether the government has historically used the medium to speak to the public; second, whether the message is closely identified in the public mind with the state; and third, the degree of control the state maintains over the messages conveyed. *Id.* Analyzing these factors together, we find that Indiana's PLPs are government speech.

*a. Indiana's Historical Use of License Plates*

---

[5] While Walker declares that it is "concerned only with . . . [Texas'] specialty license plates, not with [its] personalization program," we find its test for government speech is applicable and instructive here. Walker, 135 S.Ct. at 2244, 192 L.Ed.2d at 279. Additionally, Walker is especially informative to this case because its analysis frequently considers license plates themselves as well as the designs on them. *Id.* at 2248-50, 283-85.

4

License plates have long been used for government purposes. First and foremost, the alphanumeric combinations provide identifiers for public, law enforcement, and administrative purposes. Through these identifiers, the government enables the public to provide a unique identifier to others, differentiate between vehicles in a parking garage or lot, and identify their vehicles if they are borrowed or stolen. In addition to license plates providing unique identifiers, they "long have communicated messages from the States." *Id.* at 2248, 283. This is true of plates around the country and in Indiana. All fifty states have included graphics on their plates, including Pennsylvania's keystone in 1910, an Idaho potato in 1928, Florida grapefruits in 1935, a Georgia peach in 1940, a Colorado skier in 1958, and a Maine lobster in 1987. *See generally* James K. Fox, LICENSE PLATES OF THE UNITED STATES: A PICTORIAL HISTORY 1903-TO THE PRESENT (Interstate Directory Publ'g Co., Inc., 1994).[6] Written messages on license plates have been just as popular, beginning with "IDAHO POTATOES" in 1928. *Id.*; *see* Walker, 135 S.Ct. at 2248, 192 L.Ed.2d at 283-84. Many other states, such as Alabama, California, Maine, Missouri, and Washington, have included their state slogan. Tourist advertising is popular in both words and graphics as license plates have featured New Hampshire's Old Man in the Mountain, South Dakota's Mount Rushmore, Kentucky's Churchill Downs, and Minnesota's 10,000 lakes. *See generally* Fox, LICENSE PLATES OF THE UNITED STATES.

Like other states, Indiana has frequently communicated through its license plates. Indiana's slogans have included, among others, "DRIVE SAFELY" in 1956-1958, "LINCOLN'S YEAR" in 1959, "SAFETY PAYS" in 1960-1962, "150TH YEAR" in 1966, "WANDER" in 1985, "HOOSIER HOSPITALITY" in 1991, and currently "BICENENNIAL 1816-2016." *Id.* at 39, INDIANA ANTIQUE LICENSE PLATES 2000-PRESENT, http://www.in.gov/bmv/2834.htm. Indiana has used graphics as well, such as a minuteman in 1976, an Indy 500 car and checkered flag in

---

[6] Because the history of license plates is long and varied, "the appellate brief format" is "ill-suited to provide the background information essential to a thorough and fair consideration of [this] case." Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 808 n.1 (Ind. 2012). So, "in order to facilitate understanding of the facts and application of relevant legal principles, this opinion includes information [on the history of license plates] from identified sources outside the trial record of this case." A.B. v. State, 885 N.E.2d 1223, 1224 (Ind. 2008) (providing background information about MySpace.com when the charged crime occurred on that website). We also note that because the trial court made its rulings over a year before the Supreme Court decided Walker, the parties and trial court would not have focused on the historical aspect of Indiana's PLPs.

1979, and a sunset over a farm from 1993-1997. Fox, LICENSE PLATES OF THE UNITED STATES 39; INDIANA ANTIQUE LICENSE PLATES 1990-1999, http://www.in.gov/bmv/2833.htm. Far more recently, Indiana began offering specialty plates honoring veterans, supporting colleges and universities, and recognizing dozens of other organizations. INDIANA'S STANDARD AND SPECIALTY LICENSE PLATES, http://www.in.gov/bmv/2352.htm; INDIANA'S ORGANIZATIONAL LICENSE PLATES, http://www.in.gov/bmv/2404.htm. Not only has Indiana spoken through its license plates since 1956, it continues to do so today. INDIANA ANTIQUE LICENSE PLATES 2000-PRESENT, http://www.in.gov/bmv/2834.htm.

The plaintiffs argue that because PLP alphanumeric combinations are "individually-crafted" and "unique," Indiana's historic practice does not justify the conclusion that they are from the state. Appellee's Supp. Br. at 3. While the alphanumeric combinations on PLPs are individually chosen instead of created by the state, this difference is secondary and does not change the principal function of state-issued license plates as a mode of unique vehicle identification. And the historical context remains helpful to our analysis. Originally, Indiana license plates served only as a unique identifier. But over time, Indiana included first words, then graphics, then eventually specialty designs and personalized plates. This history shows that Indiana often communicates through its license plates and has expanded how it does so. Furthermore, the plaintiffs' distinguishing features are fully compatible with government speech. "The fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message . . . ." Walker, 135 S.Ct. at 2251, 192 L.Ed.2d at 287. And, PLPs are no more unique than public park monuments, which "typically represent government speech." Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 470, 129 S.Ct. 1125, 1132, 172 L.Ed.2d 853, 863 (2009).

*b. Identification of PLP Alphanumeric Combinations in the Public Mind with the State*

PLP alphanumeric combinations "are often closely identified in the public mind with the [State]." Walker, 135 S.Ct. at 2248, 192 L.Ed.2d at 284 (quoting Summum, 555 U.S. at 472, 129 S.Ct. at 1133, 172 L.Ed.2d at 864) (alteration in original). PLPs belong to the BMV and display "Indiana" prominently at the top of every plate, indicating that Indiana owns and issues them.

6

*See* Ind. Code § 9-18-2-31. Indiana requires motor vehicle owners to display license plates and to obtain them from the BMV, the issuing state agency. Ind. Code §§ 9-18-2-8, -26, -30. Those who apply for an Indiana PLP discover that the BMV must approve every alphanumeric combination before it can be displayed. Ind. Code § 9-13-2-125. Also, PLPs "may not duplicate a regularly issued plate" and "[o]nly one (1) personalized plate . . . may be issued by the bureau with the same configuration of numbers and letters." Ind. Code § 9-18-15-2. Under these facts, Indiana "license plates are, essentially, government IDs"[7] and license plate observers "routinely–and reasonably–interpret them as conveying some message on the [issuer's] behalf." Walker, 135 S.Ct. at 2249, 192 L.Ed.2d at 284 (quoting Summum, 555 U.S. at 471, 129 S.Ct. at 1133, 172 L.Ed.2d at 863) (alteration in original).

Even vehicle owners requesting and displaying PLPs recognize the close association of the message with the state. In about two and a half years the BMV received 71,452 new applications for PLPs. Each applicant, along with vehicle owners displaying previously approved PLPs, could have used bumper stickers, window decals, or similar private methods to display personal messages far more prominently and cost effectively.[8] Instead, many have preferred to have the state approve and authorize individualized alphanumeric combinations for display on government property for the purpose of vehicle identification.

The plaintiffs argue that this second factor supports PLPs as government speech "only if it can be believed that a person who observes, for example, a personalized license plate of 'BIGGSXY' or 'FOXYLDY' or 'BLKJEW'[9] will conclude that it is the State of Indiana that is making this assertion." Appellee's Supp. Br. at 4. The Walker dissent so argues, 135 S.Ct. at

---

[7] Notably, Walker identified license plates as essentially government IDs even though it involved specialty designs instead of the combination of letters and numbers that actually identify the vehicle. 135 S.Ct. at 2249, 192 L.Ed.2d at 284. Therefore, Indiana's PLPs are more clearly government IDs than are the specialty plates in Walker.

[8] Indiana's license plates are six inches wide and twelve inches long. Ind. Code § 9-18-2-32. The BMV charges $45 for each PLP, in addition to standard registration fees. PERSONALIZED PLATES, http://www.in.gov/bmv/2824.htm.

[9] Each of these plates was issued under Indiana's PLP program.

7

2255, 192 L.Ed.2d at 291 (Alito, J., dissenting), but the majority instead held that all of Texas' specialty plates are government speech. *Id.* at 2253. PLPs do not cease to be government speech simply because some observers may fail to recognize that PLP alphanumeric combinations are government issued and approved speech in every instance. Instead, PLPs "are *often* closely identified in the public mind with the [State]." *Id.* at 2248, 284 (quoting Summum, 555 U.S. at 472, 129 S.Ct. at 1133, 172 L.Ed.2d at 864) (emphasis added) (alteration in original). As in Walker, a few exceptions do not undermine the conclusion that PLPs are government speech.[10] Rather, a PLP "is a government article serving the governmental purposes of vehicle registration and identification." *Id.* at 2248, 284. The alphanumeric combination, regardless of its content, is government speech specifically identifying a single vehicle.[11]

*c. Indiana's Control over PLP Alphanumeric Combinations*

Applying the third factor, Indiana "maintains direct control" over the alphanumeric combinations on its PLPs. *Id.* at 2249, 284. In fact, Indiana PLPs by definition must be approved by the BMV. Ind. Code § 9-13-2-125. The BMV may reject any PLP that "(1) carries a connotation offensive to good taste and decency; (2) would be misleading; *or* (3) *the bureau otherwise considers improper for issuance*." Ind. Code § 9-18-15-4(b) (emphasis added). The BMV not only holds broad authority in reviewing PLPs, but exercises it–rejecting thousands of combinations for reasons including "misleading," "poor taste," "profanity," and "violence." *See* Appellant's App'x at 124-49. Thus, the BMV "has effectively controlled the messages [conveyed] by exercising final approval authority over their selection." Walker, 135 S.Ct. at 2249, 192 L.Ed.2d at 285 (quoting Summum, 555 U.S. at 473, 129 S.Ct. at 1128, 172 L.Ed.2d at 858) (internal quotations omitted) (alteration in original).

The plaintiffs argue that the BMV "does not exert 'effective control'" over PLPs, because,

---

[10] Among its specialty plate options, Texas offered designs advertising Remax, Dr. Pepper, and Mighty Fine Burgers. Walker, 135 S.Ct. at 2257, 192 L.Ed.2d at 294 (Alito, J., dissenting).

[11] Even the four Walker dissenters apparently agree, saying that "the [license plate's] numbers and/or letters identifying the vehicle" are "unquestionably" government speech. Walker, 135 S.Ct. at 2255-56, 192 L.Ed.2d at 292.

8

"aside from the statute challenged in this case and the eight digit limitation imposed by the license plate size, the BMV imposes no limits on the speech that individuals can devise to place on their unique personalized license plate."[12]  Appellee's Supp. Br. at 2-3.  But under <u>Walker</u>, the BMV's final approval authority establishes effective control regardless of any set list of limits.  135 S.Ct. at 2249, 192 L.Ed.2d at 284-85.  The final BMV approval authority is established both in the statute defining PLPs and in the statute challenged here.  Ind. Code §§ 9-13-2-125, 9-18-15-4.  The BMV applied its authority by creating an internal policy guide, establishing a PLP Committee, and allowing that Committee to approve or reject plates for any reason–whether listed in the policy guide or not.  Because the BMV has final approval authority by statute, and exercises effective control, we reject the plaintiffs' argument.

The three <u>Walker</u> factors apply with equal or even greater force to Indiana PLPs as they do to Texas' specialty plates, demonstrating that Indiana's PLPs are government speech.

## 2.  Forum Analysis

The plaintiffs argue that PLPs are "private speech in a forum provided by the State." Appellee's Supp. Br. at 4.  While the three <u>Walker</u> factors alone demonstrate that PLPs are government speech, we follow <u>Walker</u>'s example in addressing this argument even though it is not dispositive.  As in <u>Walker</u>, "forum analysis is misplaced here," because Indiana's PLPs do not fit into any type of government forum for private speech.  <u>Walker</u>, 135 S.Ct. at 2250, 192 L.Ed.2d at 286.

*a. Traditional Public Forum*

First, "PLPs are not a 'traditional public forum,' such as a street or a park," which the government has long held in trust for public assembly, communication, and discussion.  *Id.*

---

[12] This argument fails to grasp the extent of the BMV's authority.  In addition to the statutory limits challenged by the plaintiffs, PLP alphanumeric combinations are also limited because the BMV may not issue PLPs duplicating another plate and must approve every PLP before issuance.  Ind. Code §§ 9-13-2-125, 9-18-15-2.

(quoting <u>Perry Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 45, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794, 804 (1983)).  Traditional public forums do not extend beyond their historic confines, thus excluding PLPs from this status.  *Id.* (quoting <u>Ark. Educ. Television Comm'n v. Forbes</u>, 523 U.S. 666, 679, 118 S.Ct. 1633, 1641, 140 L.Ed.2d 875, 887 (1998)).

*b. Designated and Limited Public Forums*

Second, PLPs are not a "designated public forum" or a "limited public forum." Designated public forums exist "where government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose . . . ."  *Id.* (quoting <u>Summum</u>, 555 U.S. at 469, 129 S.Ct. at 1132, 172 L.Ed.2d at 862) (internal quotation omitted). Limited public forums exist "where a government has reserv[ed a forum] for certain groups or for the discussion of certain topics."  *Id.* (quoting <u>Rosenberger v. Rector and Visitors of Univ. of Va.</u>, 515 U.S. 819, 829, 115 S.Ct. 2510, 2516-17, 132 L.Ed.2d 700, 715 (1995)) (internal quotation omitted) (alteration in original).  The government creates these forums "only by intentionally opening a nontraditional forum for public discourse."  *Id.* (quoting <u>Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.</u>, 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567, 580 (1985)) (internal quotation omitted).  In order to determine whether PLPs have been intentionally opened for public discourse, we look to "the policy and practice of the government and to the nature of the property and its compatibility with expressive activity."  *Id.* (quoting <u>Cornelius</u>, 473 U.S. at 802, 105 S.Ct. at 3449, 87 L.Ed.2d at 580) (internal quotation omitted).

The BMV's policy and practice show that PLPs are not a public forum.  Indiana license plates "have traditionally been used for government speech, are primarily used as a form of government ID, and bear the State's name."  <u>Walker</u>, 135 S.Ct. at 2251, 192 L.Ed.2d at 287.  The BMV "exercises final authority over" each PLP alphanumeric combination, "militat[ing] against a determination that [it] has created a public forum."  *Id.* at 2251, 286.  The BMV has never opened PLPs "for indiscriminate use by the general public" or "granted [PLPs] as a matter of course" to every applicant.  <u>Perry Educ. Ass'n</u>, 460 U.S. at 47, 103 S.Ct. at 956, 74 L.Ed.2d at 806.  Instead, it requires that every alphanumeric combination be submitted, reviewed, and approved before it can be displayed.

10

Furthermore, the nature of Indiana's PLPs is not compatible with expressive activity. Because PLPs are small and contain a maximum of eight characters, they cannot realistically promote meaningful discourse, communication, and debate. *See* Ind. Code § 9-18-2-32. The primary purpose of PLPs is to register vehicles, "not to 'encourage a diversity of views from private speakers . . . .'" United States v. Am. Library Ass'n, Inc., 539 U.S. 194, 206, 123 S.Ct. 2297, 2305, 156 L.Ed.2d. 221, 233 (2003) (quoting Rosenberger, 515 U.S. at 834, 115 S.Ct. at 2519, 132 L.Ed.2d at 718). And, as explained by the United States Supreme Court, "where the principal function of the property would be disrupted by expressive activity, [we are] particularly reluctant to hold that the government intended to designate a public forum." Cornelius, 473 U.S. at 804, 105 S.Ct. at 3450, 87 L.Ed.2d at 581. Under this precedent, the primary purpose of PLPs reinforces our conclusion that PLPs are neither a limited nor a designated public forum.

*c. Nonpublic Forum*

Third, PLPs are not a nonpublic forum, which exists "[w]here the government is acting as a proprietor, managing its internal operations." Walker, 135 S.Ct. at 2251, 192 L.Ed.2d at 287 (quoting Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678, 112 S.Ct. 2701, 2705, 120 L.Ed.2d 541, 549 (1992)) (alteration in original). When the government "simply manag[es] government property," and that government property is used for private speech, nonpublic forum analysis applies. *Id.* In fact, in some nonpublic forums, government speech may exist alongside private speech. This happened in Perry Educational Association, where a nonpublic forum–an interschool mail system–transmitted "official messages," "personal messages," and "messages from various private organizations." 460 U.S. at 39, 103 S.Ct. at 952, 74 L.Ed.2d at 801. But when government property is used for government speech, and that government speech necessarily crowds out all private speech on the same property, nonpublic forum analysis is misplaced. Such is the case here.

As established above, license plates, even those with personalized alphanumeric combinations, are government speech. Private speech on license plates is prohibited and impractical even outside the alphanumeric combinations at issue in this case. In addition to the

eight-character PLP limitation, Indiana requires motorists to keep their plates "free from foreign materials and in a condition to be clearly legible" and "not obstructed or obscured by . . . accessories, or other opaque objects." Ind. Code § 9-18-2-26(b)(4)-(5). Moreover, the small area of a license plate leaves little empty space where someone could feasibly display a private message. *See* Ind. Code § 9-18-2-32(a)(1). Under these facts, we find that Indiana's PLPs do not accommodate private speech either in their alphanumeric combinations or anywhere else on the plate, and therefore are not a nonpublic forum.

PLPs are government speech, and Indiana "is not barred by the Free Speech Clause from determining the content of what it says." Walker, 135 S.Ct. at 2245, 192 L.Ed.2d at 281 (citing Summum, 555 U.S. at 467-68, 129 S.Ct. at 1131, 172 L.Ed.2d at 861). This is because "the Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." Summum, 555 U.S. at 467, 129 S.Ct. at 1131, 172 L.Ed.2d at 861. The plaintiffs' argument that the PLP regulations are not content-neutral therefore cannot succeed. "A government entity," after all, "has the right to speak for itself . . . and to select the views that it wants to express." *Id.* at 467-68, 1131, 861 (quoting Bd. of Regents of the Univ. of Wis. Sys. v. Southworth, 529 U.S. 217, 229, 120 S.Ct. 1346, 1354, 146 L.Ed.2d 193, 205 (2000)) (internal quotation omitted). The plaintiffs warn that this conclusion will lead to Establishment Clause and Free Speech Clause violations, equal protection violations, embarrassment for the state, and employment discrimination claims. Because none of these issues are presented by the facts of this case, we decline to address them.

### 3. Overbreadth, Vagueness, and Adequacy of Notice

The plaintiffs also argue that the PLP regulations are overbroad and vague. We decline to address these challenges because they are moot. An appeal or issue can become moot in various ways: (1) when it is no longer 'live' or when the parties lack a legally cognizable interest in the outcome; (2) when the principal questions in issue have ceased to be matters of real controversy between the parties; or, (3) when the court on appeal is unable to render effective relief upon an issue. *See* Matter of Tina T., 579 N.E.2d 48, 52 (Ind. 1991). Because the government is speaking, the BMV may deny or revoke PLPs regardless of the challenged

12

regulations. The plaintiffs' involvement is limited to the request for and display of PLP alphanumeric combinations, neither of which is affected by the overbreadth and vagueness challenges. The plaintiffs, then, "lack a legally cognizable interest in the outcome" and this Court "is unable to render effective relief" on these challenges. *Id.*

Finally, the plaintiffs claim that the BMV provides inadequate notice after a PLP denial or revocation, violating due process. Specifically, they argue that "custom and practice" create "a property interest secured by due process." Appellee's Br. at 44-45. The BMV responds that "[m]otorists have no protected interest in possessing a personalized plate that displays any particular message" because "there is no 'entitlement' to a personalized license plate." Appellant's Br. at 41; Appellant's Reply Br. at 23. Agreeing with the BMV, we find that the plaintiffs have not been deprived of due process.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d. 548, 556 (1972). The plaintiffs assert that they have a property interest in their PLPs–one created by "rules or understandings that stem from an independent source such as state law . . . ." *Id.* at 577, 2709, 561. But "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock v. Gonzales, 545 U.S. 748, 756, 125 S.Ct. 2796, 2803, 162 L.Ed.2d 658, 669 (2005). Here, the BMV retains full discretion over PLPs. While the BMV is required to issue a regular license plate for registered vehicles, it may decline to issue PLPs for virtually any reason. Ind. Code §§ 9-18-2-30; 9-18-15-1, -4(b). These statutes apply equally to new applications and PLP renewals. Ind. Code § 9-18-15-4(a). The same discretion applies to PLP revocations. No statute, custom, or practice secures a previously-issued PLP or supports a claim of entitlement to its continued display. *See* Roth, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. Instead, a PLP, as government speech on government property, is freely revocable.[13]

---

[13] This is not to say that the BMV could as easily revoke the vehicle's registration or refuse to provide a replacement plate. In this way, license plates are similar to driver's licenses. *See* Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90, 94 (1971) ("Once [driver's] licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses

13

While the plaintiffs rely on "understanding, custom and practice," they do not specifically identify any supporting relevant understandings, customs, or practices. These vague and undefined references cannot support a property interest under the Fourteenth Amendment. *See* Castle Rock, 545 U.S. at 763-64, 125 S.Ct. at 2807-08, 162 L.Ed.2d at 673-74. "To have a property interest in a benefit, a person *clearly* must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d. at 561 (emphasis added). The plaintiffs do not have that claim of entitlement, and thus, Due Process Clause protections do not apply. Without due process protections, the applicants whose PLPs are denied or revoked have no entitlement to reasons for the BMV's decision or to a hearing where they can present evidence.

### Conclusion

Indiana's personalized license plates are government speech. The Bureau of Motor Vehicles, therefore, does not violate the First or Fourteenth Amendments in denying an application for a PLP or revoking a previously issued PLP. Furthermore, Due Process Clause protections do not apply because vehicle owners do not have a property interest in their personalized license plates. We reverse the trial court's grant of the plaintiffs' motion for summary judgment as to these issues and direct the trial court to enter summary judgment on these claims for the BMV.

Rush, C.J., and Rucker, David, and Massa, JJ., concur.

---

thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.").