## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 22 2016, 8:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia P. Helfrich
Helfrich & Harrell, LLC
Avon, Indiana

ATTORNEY FOR APPELLEE

Robert J. Arnold
Shelbyville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michelle Powell, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Timothy Powell, <br> *Appellee-Respondent.* | November 22, 2016 <br><br> Court of Appeals Case No. 32A05-1603-DR-674 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable Rhett M. Stuard, Judge <br><br> Trial Court Cause No. 32D02-1508-DR-554 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Michelle Powell (Mother), appeals the trial court's Order, which modified custody and parenting time with the minor child, P.P. (Child), and denied Appellee-Respondent's, Timothy Powell (Father), petition for contempt.

We affirm.

## ISSUES

Mother raises three issues on appeal, which we consolidate and restate as follows:

(1) Whether the trial court deprived Mother of due process during the hearing; and

(2) Whether Father established a substantial change in circumstances warranting the modification of physical custody and parenting time of the Child.

## FACTS AND PROCEDURAL HISTORY

Mother and Father were married but separated in 2010, with the dissolution of marriage decree entered on September 27, 2010.  During the parties' marriage, one Child was born on April 19, 2006.  Father remarried in 2012 to Dawn Powell (Step-Mother).  Step-Mother has one child from a prior relationship, Step-Sister, who lives with Father and Step-Mother.  On August 13, 2012, Father and Mother entered into a mediated agreement on custody and

parenting time, pursuant to which the parties shared legal custody with Mother having primary physical custody and Father receiving parenting time. In practice, the parties established a split parenting time schedule, which allowed the Child to spend equal time with both parents, resulting in a de facto joint physical custody. Specifically, P.P. would be with Father on Tuesdays and Thursdays after school and overnight until the following morning and with Mother on Mondays and Wednesdays after school and overnight. The Child would alternate Friday and Saturday overnights with her parents, but would always be back at Mother's home by 6:00 p.m. on Sunday and spend every Sunday overnight at Mother's residence. The parties would alternate weeks during summer break and would follow the Indiana ParentalTime Guidelines for all other holidays and school breaks.

[5]     On April 22, 2015, Father was fired from his job and was unemployed until August 3, 2015, when he accepted a new position, in which he earned considerably less. Although Father was unemployed during summer break, Mother was reluctant to allow Father extra parenting time, instead preferring that the Child spend time with Mother's father or in summer camps.

[6]     Communication between Mother and Father has become difficult. Messages between the parents, including Step-Mother, are not responded to or are responded to very late. This has resulted in missed opportunities for the Child. While the mediated agreement set Mother a deadline of May 1 to give Father notice of her requested weeks of summer parenting time, in 2015, Mother waited until 10:00 p.m. on May 1 to provide Father with this information.

[7]     The Child has traditionally been involved in several extracurricular activities, including Irish Dance, basketball, softball, girl scouts, piano, violin, and dance. Some of these activities took place exclusively during Mother's parenting time, while others occurred during both Mother's and Father's parenting time. The Child is a good student and made last school year's Honor Roll. She does not display any emotional or behavioral issues.

[8]     On May 22, 2015, Father filed a verified petition for modification of decree, modification of child support, contempt, and for attorney fees. Mother moved for a change of judge and filed a motion to strike Father's petition for contempt citation because it failed to comply with the requirements of Indiana Code section 34-47-3-5. The trial court granted both of Mother's motions and struck Father's contempt petition. On August 28, 2015, Father's verified petition for modification of decree and modification of child support were unsuccessfully submitted to mediation. On October 2, 2015, Mother filed a verified motion for contempt. The trial court set all pending motions for a hearing on January 8, 2016, and allotted two hours of time. On December 14, 2015, Mother filed a verified motion to modify parenting time, which the trial court added to the hearing date without scheduling extra time. On December 31, 2015, Father filed an amended verified petition for modification of decree, contempt, and attorney fees, which the trial court set for hearing at the same time as all other motions on January 8, 2016. No additional time was allotted.

[9]     At the onset of the hearing on January 8, 2016, Mother objected to the trial court hearing Father's motion filed on December 31, 2015 due to lack of notice,

lack of opportunity to obtain discovery, and insufficiency of time allotted in light of the number of issues already scheduled. The trial court overruled Mother's objection and subsequently denied her request for continuance. Ultimately, the trial court allowed the parties an additional thirty minutes of time for the presentation of issues.

On February 2, 2016, the trial court issued its Order, entering special findings of fact and conclusions thereon, finding, in pertinent part:

> 3. There has been a substantial and continuing change in circumstances of the parties and the minor child, so substantial and so continuing as to make the current Decree unreasonable, and requiring modification of the Decree, including and not limited to [F]ather losing his job and now making $20,000 less than previously, the continued disagreement of the parties regarding scheduling, and the continued effect all of this is having on the physical and mental health of the child.
>
> * * * *
>
> 5. Certain disputes have arisen, which have brought into focus several areas which need to change for the benefit of [the Child]. Further, the [c]ourt finds that both parties have placed their own selfish desires, particularly the desire to have everything their way, above the best interests of [the Child]. Therefore, the [c]ourt has no choice but to alter the way the parties deal with each other and their daughter.
>
> 6. It has become problematic for [the Child] to spend every other night during the week at a different parent's household. The transfers have caused problems with transportation and scheduling, as well as activities and planning. Spending every

other night with a different parent during the week has become contrary to [the Child's] best interest.

7. The parents generally remain committed to joint legal and physical custody of [the Child]. For purposes of holiday visitation ONLY, Mother shall be considered the custodial parent.

8 It is in the best interest of [the Child] [] to be with one parent for one week, and the other parent the next week. Therefore, effective as of 6:00 p.m. the first Sunday after this order is issued, regardless of the current parenting time schedule, Mother shall have [the Child] for one week. At 6:00 p.m. the following week, Father shall pickup [the Child] and have [the Child] for one week and so on. Each party will pick up [the Child] at the start of their scheduled parenting time.

9. This schedule shall continue throughout the summer except that each party shall have at least 2 uninterrupted weeks with [the Child] during her summer vacation. Father shall notify Mother, no later than 10:00 p.m. on April 1st of each year when he intends to exercise his 2 week uninterrupted time with [the Child]. After Father has made his selection, Mother shall notify Father no later than 10:00 p.m. on May 1st of each year when she intends to exercise her uninterrupted 2 weeks with [the Child].

* * * *

16. It is in the best interest of the parties and the [C]hild that her parents agree as to each activity [the Child] is enrolled in. Moreover, it is not in [the Child's] best interest, at the age of 9, to be overscheduled. As such, each parent, after consultation with the other, may enroll [the Child] in one extracurricular activity at a time outside of school and shall bear the costs of the same. If both parties do not agree on an extracurricular activity, then [the

Child] will not participate in that activity. The parents are to consult with each other and confer as to the best interest of [the Child] so that the activity they choose will not unreasonably interfere with the activity chosen by the other. Once the extracurricular [activity] chosen by a party ends, that party may enroll [the Child] in another activity. Each party will be responsible for transporting [the Child] to any extracurricular [activity] that falls during their parenting time, regardless of which party selected it. Any activities [the Child] is currently enrolled in, she may finish but neither party shall enroll [the Child] in any additional activities without first consulting with the other party under the guidelines set out above.

* * * *

20. Because the [c]ourt finds that Father tried to comply with the [c]ourt's orders, in spite of being unemployed, and because the [c]ourt finds that Mother did not willfully and intentionally violate this [c]ourt's previous orders, neither party is held in contempt for any reason.

21. Mother shall allow [Step-Mother] to pick up [the Child] when Father is out of town, on business for his scheduled parenting time. It is in the best interest of [the Child] for [Step-Mother] to be allowed to pick up and drop off [the Child] if Father is temporarily not able to do so due to work obligations.

* * * *

(Appellant's App. pp. 85-90).

On March 2, 2016, Mother filed a motion to correct error. Five days later, on March 7, 2016, the trial court issued its ruling on the motion to correct error, clarifying, in pertinent part, that:

> Finding number 21 in the [c]ourt's order allows [Step-Mother] to pick up [the Child] if Father is unable to do so for his parenting time. If Father is out of town on business for two or more consecutive nights at any time during [the child's] visitation with Father, [the Child] shall stay with Mother while Father is gone. When Father returns home, if there is visitation time remaining during Father's week with [the Child], [the Child] shall return to Father's care until Mother's visitation commences again.

(Appellant's App. p. 111).

Mother now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Due Process*

Although the trial court ruled in her favor, Mother disputes the trial court's underlying proceedings in the contempt issue, arguing that she was denied due process because the trial court rejected her motion to continue and failed to issue a rule to show cause with respect to Father's contempt petition. Mother does not allege that the contempt issue itself was decided erroneously.

An appeal or issue can become moot in various ways: (1) when it is no longer 'live' or when the parties lack a legally cognizable interest in the outcome; (2) when the principal questions in issue have ceased to be matters of real

controversy between the parties; or (3) when the court on appeal is unable to render effective relief upon an issue. *Comm'r of Ind. Bureau of Motor Vehicles v. Vawter*, 45 N.E.3d 1200, 1209 (Ind. 2015). Because Mother does not challenge the trial court's conclusion on Father's contempt petition, which was the principal question in issue, any possible errors in the underlying proceedings have become moot. Accordingly, we do "not retain jurisdiction to decide . . . questions incidentally or indirectly involved in the appeal." *Modlin v. Bd. of Com'rs of Grant Co.*, 103 N.E. 506, 508 (Ind. Ct. App. 1913).

[15] Moreover, even if we were to decide Mother's issues on the merits, we would reach the same result as the trial court. First, it is generally admitted that "if no rule to show cause is issued in compliance with [the] statutes, a court may lack the authority to hold a person in contempt." *Stanke v. Swickard*, 43 N.E.3d 245, 248 (Ind. Ct. App. 2015). Nevertheless, "[s]trict compliance with the rule to show cause may be excused if it is clear the alleged contemnor had clear notice of the accusations against him, for example because he received a copy of an original contempt information that contained detailed factual allegations, or if he appears at the contempt hearing and admits to the factual basis for a contempt finding." *Id*. Our review of Father's petition reveals that the petition is very detailed in its description of Mother's alleged instances of contempt. For instance, Father refers to Mother's inability to timely communicate about her intentions of keeping the Child in Irish dance and her refusal to communicate with Step-Mother about specific matters relating to the Child. Accordingly, Mother was on notice with respect to the factual allegations lodged against her.

[16] Mother also contested the trial court's denial of her motion to continue Father's contempt petition to a later hearing because she feared not to have sufficient time at the hearing to present all the issues and wanted to conduct extensive discovery. The decision to grant or deny a motion for continuance is within the sound discretion of the trial court. *F.M. v. N.B.*, 979 N.E.2d 1036, 1039 (Ind. Ct. App. 2012). We will reverse the trial court only for an abuse of that discretion. *Id.* No abuse of discretion will be found when the moving party has not shown that he was prejudiced by the denial. *Id.*

[17] At the hearing on January 8, 2016, the trial court heard evidence on the following four motions: Father's verified petition for modification of decree, modification of child support, and for attorney fees; Father's amended verified petition for modification of decree, modification of child support, and for attorney fees; Mother's verified motion for rule to show cause and request for emergency order on health insurance; and Mother's verified motion for modification of parenting time. Although the trial court had initially allotted two hours to receive evidence, ultimately, the trial court extended the time to present evidence with an extra thirty minutes. Our review of the record reveals that the brunt of this time was used by Mother's counsel to cross-examine Father. We also recognize that during the parties' presentation of their issues, they did not focus on one single issue before continuing onto another topic but rather introduced a mix of issues, covering the four different motions. This is reflected in the trial court's resulting Order: rather than subdividing its Order into the different issues, the trial court issued findings of fact and conclusions

thereon in one general Order related to all issues. In other words, because the issues of contempt, custody, and parenting time are interconnected and evidence related to one issue can also be used to establish the existence or absence of another issue, the trial court granted sufficient time to the parties to complete their presentation of the evidence. Moreover, the trial court's denial of Father's contempt petition is a satisfactory indication that Mother was not prejudiced by the denial of her motion for continuance. We affirm the trial court's denial of Father's contempt petition.

## II. *Modification of Custody*

### A. *Standard of Review*

We review a custody modification for an abuse of discretion with a "preference for granting latitude and deference to our trial judges in family law matters." *In re Paternity of T.P.*, 920 N.E.2d 726, 730 (Ind. Ct. App. 2010) (quoting *In re Paternity of K.I.*, 903 N.E.2d 453, 457 (Ind. 2009)), *trans. denied*. We understand that appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge . . . did not properly understand the significance of the evidence, or that he should have found its preponderance or the inference therefrom to be different from what he did." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (citation omitted). Accordingly, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id*. Thus, "[t]he burden of demonstrating that an existing

custody arrangement should be modified rests with the party seeking the modification." *In re Paternity of A.S.*, 948 N.E.2d 380, 386 (Ind. Ct. App. 2011). This court will neither reweigh the evidence nor assess witness credibility, and we will consider only the evidence that directly or by inference supports the trial court's judgment. *Parks v. Grube*, 934 N.E.2d 111, 114 (Ind. Ct. App. 2010).

## B. *Modification*

[19] Mother contends that the trial court abused its discretion in modifying the custody and parenting time schedule by granting each party a week on/week off parenting time with the Child.

[20] Indiana Code section 31-17-2-21 provides that a trial court may not modify a child custody order unless (1) the modification is in the best interests of the child and (2) there is a substantial change in one or more of the factors that the court may consider under Indiana Code section 31-17-2-8. These factors include:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
> > (A) the child's parent or parents;

> (B) the child's sibling; and
>
> (C) any other person who may significantly affect the child's best interests.
>
> (5) The child's adjustment to the child's:
>
> (A) home;
>
> (B) school; and
>
> (C) community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian . . . .

[21] Based on the evidence presented, Mother does not contest specific findings, but instead generally argues that Father failed to establish a change in circumstances sufficient to support a modification in custody and parenting time. When interpreting the custody modification statute, our court explained that the statute does not require the trial court to specify which factor or factors have substantially changed. *Kanach v. Rogers*, 742 N.E.2d 987, 989 (Ind. Ct. App. 2001). Instead, the trial court "must 'consider' the statutory factors and find there has been a substantial change." *Id.*

[22]     To find a substantial change in circumstances, the trial court focused on Father's changed employment situation, the continuing disagreement between Mother and Father in scheduling the Child's extracurricular activities, their worsening communication skills, and the Child's age.

[23]     The record supports that Father testified that the current parenting schedule was confusing to the Child with going back and forth between each residence daily. He noted that summer visitation, when each parent had the Child for a full week at a time, was more manageable for the Child. Although Mother stated that the current schedule is workable, the trial court was entitled to give more weight to Father's testimony. Moreover, the current schedule caused problems with transportation and scheduling, as well as planning the Child's extracurricular activities. Evidence submitted at trial indicates that at times even the parents were confused as to who should pick up the Child, where rescheduled sporting events had moved to, or who should sell girl scout cookies. Furthermore, Father has been denied parenting time with the Child while he was unemployed and available with Mother preferring to enroll the Child in summer camp or to have the Child spend time with her maternal grandfather.

[24]     The evidence further establishes that over the years, communication between Mother and Father has broken down. At the moment, daily communication has become difficult, with the Parties not responding or responding late which resulted in missed games and vacation opportunities for the Child. Mother has

also refused to communicate with Step-Mother on mundane matters related to re-scheduled games or health insurance.

[25] Based on the record, we agree that a significant change has occurred which warrants a modification of physical custody. Specifically, in light of the Child's age and extensive extracurricular interests, a schedule whereby both parents alternate days parenting the Child is no longer feasible. The increasingly difficult communication and participation between the parents in parenting the Child only adds to the justification of Father's request for modification. Accordingly, mindful of our deferential review, we affirm the trial court's order.

## CONCLUSION

[26] Based on the foregoing, we conclude that the trial court did not abuse its discretion by modifying custody and parenting time of the Child.

[27] Affirmed.

[28] Bailey, J. and Barnes, J. concur